UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ALLY FINANCIAL INC. and ALLY BANK, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 3:25 CV 649 |
| COOK METZ II, LLC and JASON METZ, | ) ) ) ) |
| Defendants. | ) ) |

## OPINION and ORDER

This matter is before the court on plaintiffs Ally Financial Inc. and Ally Bank's (collectively, "Ally") motion for default judgment. (DE # 15.) For the reasons that follow, plaintiffs' motion is granted.

## I.     BACKGROUND

In July 2025, Ally brought suit against defendants Cook Metz II, LLC ("Dealer"), and Jason T. Metz ("Metz"). (DE # 1.) Plaintiffs claim that Dealer breached its contract with Ally and that Metz breached its guaranties with Ally.

On August 1, 2025, plaintiffs served Dealer via its registered agent. (DE # 9.) On August 6, 2025, plaintiffs served Metz via personal service. (DE # 10.) Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A)(i), defendants had 21 days to file a responsive pleading. They failed to do so.

On September 2, 2025, at the plaintiffs' request, the Clerk entered default against the defendants. (DE ## 13, 14.) Plaintiffs subsequently filed the present motion for

default judgment. (DE # 15.) To date, defendants have not appeared in this case. Plaintiffs seek damages in the amount of $213,455.79.

## II.     LEGAL STANDARD

The court may enter default judgment against a party against whom affirmative relief is sought when it fails to plead or otherwise defend. FED. R. CIV. P. 55(b)(2). "The grant or denial of a motion for the entry of a default judgment lies within the sound discretion of the trial court . . .." *Dundee Cement Co. v. Howard Pipe & Concrete Prods. Inc.,* 722 F.2d 1319, 1322 (7th Cir. 1983). If the court determines that the defendant is in default, all well-pleaded allegations of the complaint, except those relating to the amount of damages, will be taken as true. *Black v. Lane,* 22 F.3d 1395, 1399 (7th Cir. 1994). The court may hold a hearing or conduct an investigation to determine the amount of damages, FED. R. CIV. P. 55(b)(2), however, no investigation is needed if "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement Co.,* 722 F.2d at 1323.

## III.    FACTS

Based on defendants' default, the court takes the allegations in the complaint (except those related to the amount of damages) as true. The affidavits plaintiffs submitted with the motion further establish the veracity of the allegations made in the complaint. (*See* DE ## 16-1, 16-2.)

In 2016, Ally and Dealer entered into an agreement titled Inventory Financing

2

and Security Agreement ("the Agreement"). (DE # 1-1.) Under the Agreement, Ally provided Dealer with inventory financing for the acquisition of new and used automobiles and trucks for sale and lease through Dealer's retail automotive sales business. (*Id.* at 2.) Dealer agreed to fully and promptly repay the amount Ally advanced to Dealer, with interest and other fees provided for in the Agreement. (*Id.* at 6.) Dealer agreed to make such payments in full to Ally as each vehicle was sold, leased, or otherwise disposed of. (*Id.*) Under Section III.D.1 of the Agreement, Dealer granted Ally a security interest in certain collateral. (*Id.* at 8.) Section III.J.1 of the Agreement provided that if Dealer defaulted on its obligations, or if Ally deemed itself insecure concerning timely, full payments of Dealer's obligations, Ally had the right to demand immediate payment in full of all obligations owed by Dealer under the Agreement. (*Id.* at 17.)

Metz, the sole member of Dealer, executed personal continuing guaranties to Ally (collectively, "the Guaranty"), for full payment of all indebtedness of Dealer to Ally, together with all costs, expenses, and attorneys' fees incurred by Ally in connection with any default of Dealer. (DE ## 2, 3.)

In January 2024, Ally notified Dealer that it was terminating Dealer's wholesale credit lines in accordance with the terms of the Agreement, and demanded full payment of all the amounts due, to be paid no later than April 19, 2024. (DE # 16-2 at 4.) In February 2024, Metz advised Ally that Dealer applied for alternative floorplan financing with other financial service providers. (*Id.*) In April 2024, Metz updated Ally

3

on its progress securing financing, and requested additional time to obtain alternative financing. (*Id.* at 4-5.) Ally provided Dealer with extended time, through June 21, 2024, to secure alternative financing, consummate a sale of Dealer, or otherwise liquidate the remaining inventory. (*Id.* at 5.) On June 25, 2024, based on Dealer's failure to remit payment of its obligations to Ally, Ally terminated Dealer's credit lines and advised that the credit lines would be administered on a self-liquidating basis. (*Id.*) Ally also provided Dealer with additional time to remit payment of the remaining obligations owed to Ally by August 23, 2024. (*Id.*)

On August 30, 2024, Dealer made a $45,567.90 payment to Ally, but the payment was returned due to insufficient funds in Dealer's bank account. (*Id.*) Dealer provided replacement funds on September 9, 2024. (*Id.*)

On August 30, 2024, Ally provided Dealer with a final extension to October 11, 2024, provided Dealer complied with all agreements and Ally did not experience any material adverse changes. (*Id.* at 5.) On September 6, 2024, after discovering a payment in the amount of $62,340.70 for another sold vehicle was past due, and based on Dealer's defaults, Ally required on-site representatives to remain on Dealer's premises to monitor Ally collateral and maintain physical control of keys, titles, and other ownership documents. (*Id.*)

On November 13, 2024, Dealer executed a voluntary surrender of collateral agreement, whereby it agreed to surrender vehicles to Ally. (*Id.* at 6.) Ally repossessed the vehicles in 2025, and disposed of the vehicles. (*Id.*) In April 2025, Ally demanded

4

that Dealer and Metz pay all outstanding amounts, but Dealer and Metz have failed to do so. (*Id.*)

## IV.     LEGAL CONCLUSIONS

### A.     *Jurisdiction*

The court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy is greater than $75,000.00. Venue is proper under 28 U.S.C. § 1391. Personal jurisdiction is established over defendants due to defendants' minimum contacts with Indiana.

### B.     *Breach of Contract*

Ally's claims against Dealer and Metz are for breach of contract.[1] (DE # 1 at 5.) "When a federal court sits in diversity, we look to the choice-of-law rules of the forum state to determine which state's law applies to the issues before it." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) (cleaned up). Under Indiana law, the parties' choice-of-law provision dictates the substantive law to be applied. *See e.g. Allen v. Great Am. Rsrv. Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002); *Lincoln Nat'l Life Ins. Co. v. Kennedy*, 167 N.E.3d 349, 353 (Ind. Ct. App. 2021). Here, the parties' choice of law provision states that any claim shall be resolved under Indiana law. (DE ## 1-1 at 16, 1-2 at 2, 1-3 at 2.) Accordingly, the court will apply the substantive law of the State of Indiana.

---

[1] Ally claims Metz breached his guaranty agreements with Ally. Under Indiana law, "[g]uaranties are contracts and are governed by the same rules and principles applicable to . . . other contracts." *Fifth Third Bank v. Double Tree Lake Estates, LLC.*, No. 2:11-cv-0233-PPS-PRC, 2014 WL 3659780, at *4 (N.D. Ind. July 23, 2014); *see also Broadbent v. Fifth Third Bank*, 59 N.E.3d 305, 311 (Ind. Ct. App. 2016).

5

Under Indiana law, "[t]o recover for a breach of contract, a plaintiff must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007).

Taking plaintiffs' allegations in the complaint as true, plaintiffs have established a claim for breach of contract against Dealer. Ally and Dealer had a contract, Dealer breached that contract by defaulting and failing to pay under the terms of the contract, and Ally suffered damages as a result of Dealer's breach. Accordingly, the court finds Dealer liable on Ally's breach of contract claim.

Ally has also established a breach of contract claim against Metz. Metz agreed to guaranty Dealer's financial obligations, and when Dealer defaulted Metz breached his guaranty agreements by failing to pay Ally. As a result, Ally suffered damages. Accordingly, the court finds Metz liable on Ally's breach of guaranty claim.

**V.   DAMAGES**

The court must next consider what damages, if any, Ally is entitled to receive. As the damages in this case are capable of ascertainment from definite figures contained in the documentary evidence, no hearing on damages is necessary. *See Dundee Cement Co.*, 722 F.2d at 1323.

Ally seeks damages in the amount of $213,455.79. (DE # 16 at 13.) In support of this claim, Ally has submitted evidence from the relevant agreements as well as an affidavit from the employee at Ally responsible for overseeing the account with Dealer.

6

(DE # 16-2.) This evidence establishes that, under the terms of the contracts, Dealer and Metz are liable to plaintiff for: $1,186,112.60 in outstanding principal; $44,170.87 in accrued wholesale charges from November 2024 to March 2025; $7,325.00 in repossession expenses; $62,250.00 in collateral monitoring fees from September 2024 to December 2024; and $24,401.32 in non-compliance fees – all of which are offset by the proceeds of the sale of collateral ($1,110,804.00). (*Id.* at 6.) The documentary evidence supports an award of actual damages in the amount of $213,455.79 and the court awards those damages to Ally.

## VI.    CONCLUSION

For the foregoing reasons, Ally Bank and Ally Financial Inc.'s motion for default judgment (DE # 15) is **GRANTED**. The court **DIRECTS** the Clerk to **ENTER FINAL JUDGMENT** in this case in favor of plaintiffs Ally Bank and Ally Financial Inc. and against defendants Jason T. Metz and Cook Metz II, LLC, in the amount of $213,455.79.

**SO ORDERED.**

Date: February 13, 2026

                                         s/James T. Moody
                                         JUDGE JAMES T. MOODY
                                         UNITED STATES DISTRICT COURT